NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 05-2260

————————

IN RE: TRANS WORLD AIRLINES, INC.,
                                Debtor

AMERICAN AIRLINES, INC.,
                    Appellant
                        v.
ELIZABETH A.M. ROBINSON

MARK S. KENNEY,
            Trustee

————————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 04-cv-00234)
District Judge: Honorable Sue L. Robinson

————————

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2006

Before:  RENDELL, SMITH and ALDISERT, <u>Circuit</u> <u>Judges</u>.

(Filed May 10, 2006)

————————

OPINION OF THE COURT

————————

RENDELL, *Circuit Judge.*

This appeal arises out of the chapter 11 bankruptcy of debtors Trans World

Airlines, Inc. and certain of its affiliated entities (collectively, "TWA").  The appellant is

American Airlines, Inc. ("American"), the purchaser of substantially all of TWA's assets.

On March 24, 2003, Elizabeth Robinson filed a motion in the Bankruptcy Court seeking

to compel American to pay her certain benefits under the Federal Longshoremen's and

Harbor Workers' Act (the "Longshoremen's Act").  Robinson argued that American

assumed this obligation under the terms of the Asset Purchase Agreement ("APA") in

which it purchased substantially all of the assets of TWA.

On February 27, 2004, the Bankruptcy Court entered an order granting certain

relief requested by Robinson.  The Bankruptcy Court ordered American to make

workers' compensation payments to Robinson in the amount of $1,866.32 per month,

commencing April 9, 2001.  The District Court affirmed the Bankruptcy Court's order.

American argues that the Bankruptcy Court and District Court were incorrect in their

conclusion that American had assumed any liability to pay Robinson pursuant to the

APA.  We will affirm the order of the District Court.[1]

---

[1]The Bankruptcy Court had jurisdiction to review Robinson's motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.  The District Court had jurisdiction pursuant to 28 U.S.C. § 158.  We have appellate jurisdiction pursuant to 28 U.S.C. §§ 158 and 1291. We have plenary review of the District Court's determination, exercising the same review of the Bankruptcy Court's decision as that exercised by the District Court.  *Airline Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 128 (3d Cir. 1997).  We review the Bankruptcy Court's findings of fact only for clear error and its legal determinations *de novo*.  *Id.*

I.

Robinson is a former flight attendant of TWA who sustained a work-related injury during a flight between Paris and New York on January 31, 1984. She was permanently disabled. Shortly thereafter, she began receiving benefits in accordance with a collective bargaining agreement between TWA and the Independent Federation of Flight Attendants (the "IFFA"), dated April 12, 1983 (the "CBA"). Article 20(D)(2) of the CBA provided that "[t]he Company will provide benefits for the Flight Attendants in International Operations in accordance with either the Workers' Compensation laws of the State of New York or the Federal Longshoremen's Act, whichever provides the higher benefits." App. 220. At the time of Robinson's injury, the Longshoremen's Act provided higher benefits than those provided under New York state law. Accordingly, TWA became obligated to and provided benefits to Robinson in accordance with the union contract at the higher Longshoremen's Act level.

On August 13, 1992, TWA and the IFFA entered into an amended collective bargaining agreement (the "Amended CBA"). Though American has been unable to produce the actual Amended CBA, American now asserts that the Amended CBA "clarified" that permanently disabled employees were not entitled to Longshoremen's Act benefits. Regardless of this purported intended meaning of the Amended CBA, TWA continued paying Robinson's Longshoremen's Act benefits.

On January 9, 2001, TWA and American entered into the APA, whereby

3

American agreed to purchase substantially all of TWA's assets, subject to an auction and

sale pursuant to section 363 of the Bankruptcy Code.  Under the APA, American agreed

to assume "[a]ll workers' compensation obligations for all employees of TWA and the

other Sellers as of the Closing Date calculated in accordance with methods, principles,

practices and policies employed in the preparation and presentation of the September

Balance Sheet and with generally accepted accounting principles consistently applied."

App. 242-243.  The next day, on January 10, 2001, TWA filed voluntary petitions for

relief under chapter 11.  On March 12, 2001, the Bankruptcy Court entered an order

approving the sale of substantially all of TWA's assets to American in accordance with

the terms of the APA.  At about this time, TWA ceased paying Longshoremen's Act

benefits to Robinson.  However, TWA's insurance carrier continued to pay her New

York State workers' compensation benefits.

In December 2002, TWA and Robinson entered into a settlement agreement,

whereby TWA paid her $25,000 for settlement of the five proofs of claims she had filed

against TWA in the bankruptcy proceeding.  However, American was not a party to this

post-APA settlement agreement.  On March 24, 2003, Robinson filed a motion with the

Bankruptcy Court seeking to compel American to pay her the benefits she believed she

was entitled to under the Longshoremen's Act.  The Bankruptcy Court reviewed

evidence and took testimony.  On February 27, 2004, the Bankruptcy Court entered an

order granting the relief requested in Robinson's motion.  The Court ordered American

to make workers' compensation payments to Robinson in the amount of $1,866.32 per month, retroactive to April 9, 2001.  All accrued but as yet unpaid monthly payments were to be calculated with interest from the dates of accrual at the rate established by 28 U.S.C. § 1961.   The Bankruptcy Court also issued a letter opinion setting forth its reasoning: first, TWA had a continuing obligation to Robinson that was not extinguished by the Amended CBA; second, American assumed the ongoing obligation to Robinson by virtue of the terms of the APA; and, third, Robinson's settlement with TWA did not affect American's obligation to her.   American appealed the order of the Bankruptcy Court to the District Court.  On March 28, 2005, the District Court entered an order affirming the Bankruptcy Court's order.

## II.

American now advances three arguments on appeal.  First, American argues that TWA had no obligation to provide Robinson with Longshoremen's Act benefits after the effective date of the Amended CBA (August 13, 1992), which American argues eliminated TWA's obligation to provide Longshoremen's Act benefits to permanently disabled employees.  Second, American argues in the alternative, even if TWA did have an obligation to provide Robinson with Longshoremen's Act benefits under the Amended CBA, American did not assume that liability, and, even if it did assume that liability, the total amount of such obligation was no more than $446.30, the pro-rata amount of TWA's Longshoremen's Act obligation to Robinson as of the closing date of

the sale to American.  Third, American argues that, as a successor of TWA, it was

released of any obligation to Robinson by the December 2002 settlement agreement

between TWA and Robinson.  As discussed below, we find these arguments

unpersuasive.

A.

The pivotal issues are, first, whether, at the time of the APA, TWA had an

obligation to pay Robinson, and, second, what "obligation" was assumed by American by

virtue of the APA.  American argues that TWA no longer had an obligation to pay

Robinson's Longshoremen's Act benefits under the Amended CBA.  We find this

unconvincing.  First, we note that this does not appear to have been TWA's

interpretation of the Amended CBA.  TWA continued to pay Robinson Longshoremen's

Act benefits for more than eight years after the effective date of the Amended CBA and

until its bankruptcy and sale of substantially all assets to American.  Second, the

Amended CBA specifically states that TWA "agrees that it will not challenge nor attempt

to reduce any permanent disability benefits, mistakenly awarded prior to the effective

date of the new Agreement and computed using the Federal Longshoremen's and Harbor

Worker's Act...."  App. 820 (emphasis omitted).  Thus, even if we accept American's

argument that the Amended CBA was designed to "clarify" that permanently disabled

employees are not entitled to Longshoremen's Act benefits, the Amended CBA was

clearly intended only to forestall claims by future disabled employees and not to apply

6

retroactively to those employees already receiving benefits.  Therefore, we do not believe

that the Bankruptcy Court erred in its conclusion with respect to the effect of the

Amended CBA.  American's argument is belied both by the extrinsic evidence of TWA's

continued payments to Robinson and the plain language of the Amended CBA.

American next argues that the Bankruptcy Court erred in finding that American

had assumed any of TWA's obligation to Robinson under the APA.  American also

argues that, if we find that it is obligated to Robinson under the APA, we should find that

it is only obligated to pay Robinson for $446.30, which American argues is the pro-rata

amount of TWA's Longshoremen's Act obligation to Robinson as of the APA's closing

date.  We find these arguments equally unpersuasive.

When American purchased substantially all of TWA's assets, it agreed to assume

"[a]ll workers' compensation obligations for all employees of TWA and the other Sellers

as of the Closing Date calculated in accordance with methods, principles, practices and

policies employed in the preparation and presentation of the September Balance Sheet

and with generally accepted accounting principles consistently applied."  App. 243.  The

Bankruptcy Court found that the obligation assumed by American pursuant to the APA

was based upon the calculation of worker's compensation obligations as then set forth in

TWA's records.  Further, it found that TWA's own accounting reflected its continued

obligation to pay Robinson $1,866.32 per month.  The Bankruptcy Court concluded that

the term "all worker's compensation obligations" included TWA's obligations to pay

Robinson at the higher Longshoreman's Act rate.  We will not disturb the Bankruptcy

Court's interpretation of the APA.

B.

Finally, we find no error in the Bankruptcy Court's conclusion that Robinson's

December 2002 settlement with TWA did not extinguish American's obligation to pay

benefits to Robinson.  As the Bankruptcy Court observed, American's assumption of

TWA's obligation to Robinson occurred on April 9, 2001 when the APA became

effective.  Because Robinson's settlement with TWA was executed after American had

already assumed the obligation, the settlement agreement did not encompass American's

separate obligation to Robinson.  Moreover, as the Bankruptcy Court noted, the

settlement agreement released the "Debtors" and the "Estate"; it did not release successor

entities such as American.  Further, the release provision specifically provides that

"nothing herein shall be construed or operate in any way to alter or release ... American

Airlines, Inc. ("American") from any alleged liability they may have to Robinson."  App.

354.  Thus, the release specifically carved out any claim Robinson might have against

American.  In addition, as the Bankruptcy Court observed, American was not a party to

the settlement agreement and does not appear to have even been aware of the agreement

until after it was executed.  The Bankruptcy Court found that it was "quite apparent from

the settlement agreement that TWA thought Ms. Robinson had a continuing right to

assert a claim against American."  We find no error in the Bankruptcy Court's analysis or

8

conclusion in this regard.

III.

For the foregoing reasons, we will affirm the order of the District Court affirming the order of the Bankruptcy Court.